IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, May 31, 2011

## IN RE: EMILY L.
## IN RE: D.L.

**Appeal from the Chancery Court for Hamilton County**
**Nos. 10-A-020 and 10-A-021     Hon. W. Frank Brown, III., Chancellor**

**No. E2011-00017-COA-R3-PT-FILED-JUNE 30, 2011**
**No. E2011-00132-COA-R3-PT-FILED-JUNE 30, 2011**

In this Petition to terminate the parental rights of the father to two minor children, the Trial Court, following an evidentiary hearing, terminated the parental rights of the father on the statutory grounds of abandonment and held that it was in the best interests of the children that the father's parental rights be terminated. The father appealed, and upon our review we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Kara L. West, Chattanooga, Tennessee, for the appellant, J.DL.

Leslie B. McWilliams, Chattanooga, Tennessee, for the appellees, D.C. and J.C.

Rachel Brock, Chattanooga, Tennessee, for the minor children, D.L. and E.L.

### OPINION

Petitioners, Deborah and Jeff Cramer, filed a Petition for Termination of Parental Rights and Adoption, seeking to adopt D.L. and E.L., on the grounds they had had physical custody of the children since 2005, and legal custody of the children since 2006, and the

father, J.L., had willfully failed to visit or support the children. A guardian ad litem was appointed to represent the children, and an attorney was appointed to represent the father.

The father answered, opposing termination of his parental rights and the adoption, but admitted that he was incarcerated from January 7, 2010 through the date the Petition was filed, and that his last visitation with the children had been on September 24, 2006.

The maternal grandparents, filed a Motion to Intervene, stating the biological parents had agreed to surrender their parental rights to them, and they could adopt the children. The Motion to Intervene was granted.

The trial occurred on November 16, 2010. The father testified at the evidentiary hearing, along with other witnesses, and the exhibits in the record include pictures of a meth lab that was present in the home where the father, mother and children had lived, along with the father's lengthy criminal record.

The Court filed a Memorandum Opinion and Final Order, and found the father was arrested on April 25, 2005, in Georgia, for driving on a suspended license, having a cracked windshield, and possessing illegal drugs. The Court found the father never resided with the children after this arrest, and that Ms. Patterson continued to reside in the home with the children until her arrest in May of 2005 on drug charges, and that exhibits in the record established that equipment and ingredients used to manufacture methamphetamine was in the home where the children lived.

The Court found that while both parents were incarcerated, the children were placed in the physical custody of Steven and Andrea Edwards, their maternal uncle and aunt, and Pat Barrows, the maternal grandmother. The Court found that Ms. Edwards talked to petitioners about letting the children stay with them as the Edwards already had two children, one of whom was an infant who had just undergone an expensive surgery, and petitioners had no children. The Court found that Ms. Edwards said Ms. Barrows was too old and could not afford to keep the children, and that a Petition was filed and legal custody of the children was granted to the petitioners on May 13, 2005.

The Court found that initially, the children exhibited signs of severe emotional and/or developmental problems, and that petitioners sought professional help for the children by taking them to the Child Advocacy Center and having them checked for abuse, and that petitioners sent a letter to family members seeking financial help with the children, but no support was given. The Court found that petitioners returned the children to the Edwards in October 2005, and the Edwards filed a petition for custody in late October. However, the Court found that petitioners missed the children, and that after Mr. Cramer saw the children

at Thanksgiving 2005, they took the children. Further, that physical custody was awarded to petitioners the first week of December 2005. Legal Custody was awarded early in 2006.

After the father was released from prison, a petition for visitation was filed in juvenile court by the father, and supervised visitation was established on April 26, 2007. The father did not visit, however, due to problems with his probation, and his petition for visitation was dismissed at a hearing where the father did not appear. The Court found that the father, while on probation, failed drug screening in June and July 2006, and became a fugitive from justice, and the Court found that the father's fugitive status kept him from working a regular job. Except for one offer of money to Mr. Cramer, the father never provided any support for the children while they were in the Cramers' custody. The Court found the father was arrested on January 7, 2010, and was released on June 2, 2010, and was presently under house arrest until March 4, 2011, and had been laid off from his work two months previously and was seeking other employment.

The Court found the children were doing well at school, church and home, and they had bonded with the Cramers and looked to them as parents.

The Court held that petitioners did not interfere with the father's visitation, and never disobeyed any court order.

The Court then reviewed the statutory and case law regarding terminations, and found by clear and convincing evidence the father willfully failed to visit the children for four months prior to his incarceration on January 7, 2010, and that the father had also violated the last part of the abandonment subsection found at Tenn. Code Ann. §36-1-102(1)(A)(iv), regarding a parent who engages in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. Also, the Court found the father had abandoned the children by willful failure to support, as no support had been paid, and the father quit a job in 2007 to avoid arrest.

As to the best interest analysis, the Court found that it was unknown if the father had really terminated his use of drugs, and the father admitted that he was using drugs before his arrest in 2005 while living with the children, and that the father had not maintained regular visitation or contact with the children, and did not have a meaningful relationship with the children. The Court observed the children had been with petitioners for 58 consecutive months, and were stable and their behavior now conformed to expected social standards, and that the children were thriving, and petitioners provided for all their needs. The Court concluded that it was in the children's best interests to terminate the father's parental relationship.

The father has appealed, raising these issues:

1.  Did the Trial Court err in terminating the father's parental rights on the grounds of abandonment for failure to visit when he was unable to participate in supervised visits due to a parole violation/incarceration?

2.  Did the Trial Court err in terminating the father's parental rights on the grounds of abandonment for failure to support when he had no income/employment during that time?

3.  Did the Trial Court err in terminating the father's parental rights on the grounds of abandonment for engaging in conduct that exhibits a wanton disregard for the welfare of the children?

4.  Did the Trial Court err in determining that termination was in the children's best interests?

In order for the trial court to terminate father's parental rights, the Court must first find clear and convincing evidence that a statutory ground for termination exists. Tenn. Code Ann. §36-1-113. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence", as it "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re: M.J.B.*, 140 S.W.3d 643 (Tenn .Ct. App. 2004). Tenn. R. App. P. 13 requires us to review findings of fact *de novo* with a presumption of correctness. In this case, the Court found that grounds existed because (1) the father had abandoned the children by failing to visit them, (2) the father had abandoned the children by failing to pay support, and (3) the father had abandoned the children by engaging in conduct that exhibited a wanton disregard for the welfare of the children prior to his incarceration. Tenn. Code Ann. §36-1-102 and 113.

The record clearly establishes that the father wilfully failed to visit the children for the four months before his incarceration. During that time frame the father was admittedly "on the run", and hiding from authorities until July 2007. The father's visitation was prevented only by his own actions, and not the actions of the Cramers.

As the Supreme Court has previously stated, a "parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re MLP*, 281 S.W.3d 387, 393 (Tenn. 2009). In this case, no other party prevented

the father from visiting his children. The father chose not to visit with his children when he become a fugitive from justice, and the evidence is clear that the father willfully failed to visit the children for the relevant four month period.

Also, the father willfully failed to support the children, for the same reason. The evidence establishes the father never paid any support for the children in the five years they lived with the Cramers.

We have explained that the "willful" failure to support occurs "when a person is aware of his or her duty to support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Adoption of CBF*, 2008 WL 1899991 (Apr. 30, 2008). The proof establishes that the father knew he should support the children, and he had the capacity to work and support the children as demonstrated by his 14-month welder job that he left, but he made no attempt to support the children and had no justifiable excuse for not doing so. We affirm the Judgment of the Trial Court finding by clear and convincing evidence the father's failure to support as a ground for termination as well.

Finally, the father argues that the Court erred in finding that he engaged in conduct that exhibited a wanton disregard for the welfare of the children prior to his incarceration. We have previously recognized that parental incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005). Thus, when parental incarceration is coupled with "a broader pattern of conduct" prior to incarceration that exhibits a wanton disregard for the welfare of the child, the statutory ground has been met. *See, In re: C.A.H.*, 2009 WL 5064953 (Tenn. Ct. App. Dec. 22, 2009).

The father's wanton disregard for the children's welfare was established by his continuing drug use, possession of drugs, manufacturing methamphetamine and becoming a fugitive to avoid arrest.

As to the best interest issue, the Court is required to consider factors set forth in Tenn. Code Ann. §36-1-113(i). In this regard, the Trial Court made extensive findings regarding these factors, and those findings are clearly supported by the evidence. The Trial Court properly found that clear and convincing evidence supported his determination that termination was in the children's best interest.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to James Donnie Lewis.

_____
HERSCHEL PICKENS FRANKS, P.J.